## William Whaley *v.* Wesley Whaley, et al.

**Wills—Capacity to Make Will—Credibility and Weight of Evidence.**

Where the soundness of mind of a testator is involved in a trial the court has no right to instruct the jury as to what weight it should give certain classes of evidence. The jury alone is required to determine what weight it will give to evidence.

**Opinion Evidence.**

The test of the value of opinion evidence as to the soundness of mind, in cases where it may be admitted, must depend upon the knowledge the witness has of the facts necessary to form a correct opinion and the capacity of the witness to deduce right conclusions from the facts.

**Wills—Character of Attesting Witnesses.**

Evidence of the good character of attesting witnesses to a will is not admissible, where their character has not been assailed.

### APPEAL FROM FLEMING CIRCUIT COURT.

#### April 13, 1877.

Opinion by Judge Cofer:

Instructions 4 and 5 given at the instance of the appellees were misleading, and number 5 was inconsistent with number 3 given for the appellants.

That the mere opinions of witness as to the capacity or incapacity of a testator, when not accompanied by facts on which the opinions are based, are entitled to but little weight, and that the opinions of the subscribing witnesses are entitled to more weight than the opinons of other witnesses are propositions to be found in the elementary treatises and in many adjudged cases. But neither should be given in instructions to a jury. They are the exclusive judges of the weight of the evidence and the credibility of witnesses, and should be left to weigh the evidence without the intervention of the court. Such opinions have always been held competent by the courts of this state on the trial of the issue, will or no will, and being competent the court has no more right to indicate to the jury its opinion of the weight to which such evidence is entitled than it has to express its opinion as to the weight of any other item of evidence permitted to go before them.

Other things being equal, the opinions of subscribing witnesses may be entitled to more weight than the opinions of others. They are present with the testator at the very moment when he declares the writing to be his will, and intelligent and thoughtful men called to

attest a will, will naturally observe the mental condition of the testa-
tor and seek the means of forming an opinion as to his capacity to
make a rational disposition of his estate. They are then notified that
they will be called to testify on the subject of his capacity, and that
fact may lead them to form an opinion at the time. These considera-
tions will render the opinions of subscribing witnesses of more value
than the opinions of the same witnesses would have possessed if they
had not been called to witness the publication of the will. But it is
unreasonable to say without reference to any other consideration that
because A is a subscribing witness his opinion of the testator's capac-
ity is entitled to greater weight than the opinion of B, who is not a
subscribing witness. B may be more intelligent, more observant, than
A, and have had more and better opportunities for judging of the
testator's capacity, and may also have had occasion to note with
greater particularity the condition of his mind. Opportunity to learn
and intelligence to observe and relate facts are elements to be consid-
ered in estimating the value of the testimony of witnesses, and they
are no less important in estimating the opinions of witnesses, and
hence the rule that the opinion of a subscribing witness to a will is
entitled to greater weight than the opinion of any other witness must
be taken with some qualifications. Logically considered, the value of
an opinion as evidence must depend upon the knowledge the witness
possesses of the facts necessary to form a correct opinion and his
capacity to deduce right conclusions from the facts. This is the only
rational test.

The law, by assuming that the subscribing witnesses have better
opportunities than others to form correct opinions, and that their
duty as such witnesses will induce them to observe and know the
state of the testator's mind, attaches greater importance to their tes-
timony, but if the assumed conditions be shown not to exist the
foundation is removed and the rule ceases. But if such were not the
case it would still be improper to indicate to the jury the opinion of
the court as to the relative weight of the opinions of different classes
of witnesses.

Fair argument and persuasion by one person to induce another to
make a will in his favor is not unlawful, if it be not so made or per-
sisted in as to destroy free agency. But if arguments, however fair,
or persuasion, however legitimate, be so persisted in as to induce the
making of a will or a provision of it simply to be rid of the argument
or persuasion, and not because it has produced an actual change in
the purpose of the testator, the will should be rejected as having been

obtained by an undue influence. The court, therefore, erred in giving instruction No. 7 without the qualification above indicated.

Numbers 8 and 9 were also misleading. It is not necessary that the will of the testator should be so subordinated to the will of another that the testamentary act of one becomes the act of the other. It is enough if the testator be unable to resist the influence brought to bear upon him and makes the will or provision desired, not because he is willing to make it, but because another desires it. Nearly all of No. 9 is abstract, and when considered as a whole that instruction is much involved and was well calculated, in view of the facts of this case, to mislead the jury.

Legitimate social relations must be allowed to produce their natural results even upon last wills and testaments, and influence arising from such relations will not violate a will, even if exercised over the very act of making it, unless it is of such character as to destroy the free agency of the testator, but if influence arising even from legitimate relations be so exercised as to prevent the will from being truly the act of the testator, it ceases to be legitimate and becomes a vicious element in the testamentary act.

No. 1 given for the appellants is unobjectionable, and No. 3 is a correct exposition of the law, but for the reasons suggested in considering appellee's instructions, 4 and 5 should not have been given. No. 2 given for the appellants might have misled the jury. In it they were told that "if Wesley Whaley had sufficient influence over the mind of Johnston Whaley to control him in the disposition of his property by last will and testament, and actually exerted this influence to procure the making of the will," etc., the instrument was invalid. The instructions would have been less liable to be misunderstood if it had read "and actually exerted that influence and controlled him in making the will, or some provision of it." The jury might have understood the court to mean, though the instruction is probably not fairly susceptible of that construction, that if Wesley possessed a controlling influence over the mind of his father the exercise by him of any influence whatever to procure the will was unlawful.

Although we might not have felt it proper to reverse for that alone, we think the court erred in allowing the appellees to offer evidence of the good character of the attesting witnesses. Their character had

not been assailed, and it was therefore not proper to offer evidence
of their good character.

Judgment *reversed* and cause remanded for a new trial.

H. L. Stone, N. P. Reid, J. M. Elliott, W. H. Wadsworth, for ap-
pellant.   A. Duvall, B. D. Lacy, Nesbitt & Gudgell, for appellees.